UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. _____ |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| NIC INC., HARRY H. HERINGTON, | : **SECTIONS 14(a) AND 20(a) OF THE** |
| VENMAL ARASU, ART N. BURTSCHER, | : **SECURITIES EXCHANGE ACT OF** |
| C. BRAD HENRY, SYLVESTER JAMES, | : **1934** |
| ALEXANDER C. KEMPER, WILLIAM M. | : |
| LYONS, ANTHONY SCOTT, | : **JURY TRIAL DEMANDED** |
| JAYAPRAKASH VIJAYAN, and PETE | : |
| WILSON, | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against NIC Inc. ("NIC or the "Company") and the members of NIC's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of NIC by Tyler Technologies, Inc. a company incorporated in Delaware ("Tyler Technologies") and Tyler Technologies' affiliates.

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on March 2, 2021 with the United States Securities and

Exchange Commission ("SEC") and disseminated to the Company's stockholders. The Proxy Statement recommends that the Company's stockholders vote in favor of a proposed transaction whereby Topos Acquisition, Inc. ("Merger Sub") will merge with and into NIC, with NIC surviving the merger and becoming a wholly-owned subsidiary of Tyler Technologies (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each NIC common share issued and outstanding will be converted into the right to receive $34.00 in cash (the "Merger Consideration").

3. As discussed below, Defendants have asked NIC's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Cowen and Company LLC ("Cowen") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to NIC's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because NIC in incorporated in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of NIC common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Harry H. Herington has served as a member of the Board since 2006 and as Chairman of the Board since May 2008, and as the Company's Chief Executive Officer since February 2008.

11. Individual Defendant Venmal Arasu has served as a member of the Board since 2015.

12. Individual Defendant Art N. Burtscher has served as a member of the Board since 2004.

13. Individual Defendant C. Brad Henry has served as a member of the Board since 2011.

14. Individual Defendant Sylvester James has served as a member of the Board since 2020.

15. Individual Defendant Alexander C. Kemper has served as a member of the Board since 2007.

16. Individual Defendant William M. Lyons has served as a member of the Board since 2009.

17. Individual Defendant Anthony Scott has served as a member of the Board since 2018.

18. Individual Defendant Jayaprakash Vijayan has served as a member of the Board since 2018.

19. Individual Defendant Pete Wilson has served as a member of the Board since 1999.

20. Defendant NIC is incorporated in Delaware and maintains its principal offices at 25501 West Valley Parkway, Suite 300, Olathe, Kansas 66061.  The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "EGOV."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

### SUBSTANTIVE ALLEGATIONS

A. **The Proposed Transaction**

23. NIC, together with its subsidiaries, provides digital government services and payment solutions that enable governments to use technology to provide various services to businesses and citizens in the United States.  The Company operates through three segments: State Enterprise, Payments, and TourHealth.  Its digital government services consist websites and

applications that enable businesses and citizens to access government information through online channels, such as applying for a permit, retrieving government records, filing a government-mandated form or report, and making digital payments.  The Company's service offerings include business registrations and renewals; court services; driver's license renewal; health professional license services; hunting and fishing licenses; income and property tax payments; limited criminal history searches; motor vehicle driver history record retrieval; motor vehicle inspections; payment processing; prescription drug monitoring; professional license renewal; secretary of state business searches; temporary vehicle tags; uniform commercial code searches and filings; vehicle title, lien, and registration; and vital records.  Its software & services business provides SaaS solutions relating to payment processing, healthcare and licensing, COVID-19 testing solutions, software development, and other digital government services under state enterprise contracts to federal, state, and local governments.  In addition, the Company develops and manages the pre-employment screening program for motor carriers using transaction-based business model.  NIC was founded in 1992 and is headquartered in Olathe, Kansas.

24. On February 10, 2021, NIC and Tyler Technologies jointly announced that they had entered into a proposed transaction:

> PLANO, Texas & OLATHE, Kan.--(BUSINESS WIRE)--Tyler Technologies, Inc. (NYSE: TYL) and NIC Inc. (NASDAQ: EGOV), jointly announced today that they have entered into a definitive agreement under which Tyler will acquire all outstanding shares of NIC in an all-cash transaction valued at approximately $2.3 billion.
>
> Under the terms of the transaction, which was unanimously approved by the boards of directors of both companies, NIC stockholders will receive $34.00 per share in cash, which represents a premium of approximately 22% to NIC's 30-day volume weighted average price as of February 9, 2021, and a 14% premium to the closing share price and 52-week closing high of $29.81 on February 9, 2021.
>
> NIC is a leading digital government solutions and payments company, serving more than 7,100 federal, state, and local government agencies across the nation.

Headquartered in Olathe, Kansas, NIC delivers user-friendly digital services that make it easier and more efficient for citizens and businesses to interact with government – providing valuable conveniences like applying for unemployment insurance, submitting business filings, renewing licenses, accessing information, and making secure payments without visiting a government office. Leveraging its strong track record of innovation, NIC helps government agencies rapidly deliver new digital solutions to provide essential services to citizens and businesses alike. In fiscal year 2020, NIC delivered revenues of $460.5 million and net income of $68.6 million.

"The pandemic has accelerated the shift by governments to online services and electronic payments as more citizens and businesses are interacting digitally with government. NIC is uniquely positioned with its deep expertise and robust digital solutions to partner with us in making government more efficient and more accessible to citizens," said Lynn Moore, Tyler's president and chief executive officer. "Our companies share a vision for thriving, connected communities, and our cultures are extremely compatible. The combination will provide extensive benefits for the clients, employees, and shareholders of both companies."

"This announcement marks an exciting next chapter in our 30-year history, and one that we believe will create significant value for our government partners, employees, and stockholders," said Harry Herington, NIC's chief executive officer and chairman of the board. "The combined vision, strength, and resources of our companies will accelerate our collective ability to provide innovative, efficient, transparent services to local, state, and federal governments. With this transaction, we are pleased to be able to deliver immediate, premium cash value to our stockholders and we look forward to NIC's continued success as part of Tyler."

Tyler's strength in local government and NIC's strength in state government are highly complementary. Together, the combined company expects to significantly expand its business with federal agencies and leverage Tyler's sales channels and client base to enhance NIC's scale and accelerate its strategy of bringing vertical applications to clients. In addition, NIC has extensive expertise and scale in the government payments arena, processing more than $24 billion in payments on behalf of citizens and governments in 2020, which will accelerate Tyler's strategic payments initiatives. Tyler has a history of successful acquisitions, investing in and growing acquired companies. Tyler expects NIC to continue to manage its operations from its Olathe, Kansas, home office and to retain its employees and leadership team.

**Financing, Approvals and Timing**

Tyler plans to fund the transaction with a combination of approximately $700 million of cash on Tyler's balance sheet and new debt. Tyler has obtained financing commitments for a $1.6 billion bridge facility with Goldman Sachs Bank USA and

expects to replace the bridge facility with permanent financing prior to closing. The combination is expected to be accretive to Tyler's non-GAAP earnings and EBITDA, as well as recurring revenue mix and free cash flow per share, in 2021.

The transaction is subject to the satisfaction of customary closing conditions, including regulatory approvals and approval by NIC's stockholders. The transaction is expected to close in the second quarter of 2021.

**Advisors**

Goldman Sachs & Co. LLC is serving as exclusive financial advisor to Tyler, and Munck Wilson Mandala LLP is serving as legal counsel. Cowen and Company LLC is serving as exclusive financial advisor to NIC, and Shearman & Sterling LLP is serving as legal counsel.

\* \* \*

25.  The Board has unanimously approved the Proposed Transaction. It is therefore imperative that NIC's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.  **The Materially Incomplete and Misleading Proxy Statement**

26.  On March 2, 2021, NIC filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning NIC Financial Projections*

27. The Proxy Statement fails to provide material information concerning financial projections by NIC management and relied upon by Cowen in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisor with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that NIC management provided to the Board and the financial advisor. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28. First, the Proxy Statement omits the projections prepared in February 2020, which represented the Company's projections for pre-COVID figures.

29. Second, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA, EBIT, Unlevered Free Cash Flow but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

30. When a company discloses non-GAAP financial measures in a proxy statement that were relied on by a board of directors to recommend that stockholders exercise their corporate

suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

32. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

33. With respect to Cowen's *Selected Public Companies Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and metrics for the companies observed by Cowen in the analysis; and (ii) the inputs and assumptions underlying the selection of the multiples ranging

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

from 14.3x – 19.0x for CY2021E Adjusted EBITDA and 12.8x – 17.1x for CY2022E Adjusted EBITDA.

34. With respect to Cowen's *Selected M&A Transactions Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and metrics for the transactions observed by Cowen in the analysis; and (ii) the inputs and assumptions underlying the selection of the Adjusted EBITDA Multiples ranging from 13.7x to 16.7x.

35. With respect to Cowen's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement also fails to disclose: (i) the terminal value calculated for the Company; (ii) the inputs and assumptions underlying the range of discount rates ranging from 8.0% to 9.0%; (iii) the inputs and assumptions underlying the use of perpetuity growth rates ranging from 2.5% to 3.5%; (iv) the Company's total debt as of December 31, 2020; (v) the Company's cash and cash equivalents as of December 31, 2020; and (vi) the Company's number of fully diluted shares outstanding as of December 31, 2020.

36. With respect to Cowen's *Illustrative Present Value of Future Stock Price Analysis*, the Proxy Statement fails to disclose: (i) the Company's total debt for the end of calendar years 2021, 2022, and 2023, respectively; (ii) the Company's cash and cash equivalents for the end of calendar years 2021, 2022, and 2023, respectively; and (iii) the inputs and assumptions underlying the range of discount rate of 8.6%.

37. With respect to Cowen's *Illustrative Precedent Premiums Paid Analysis*, the Proxy Statement fails to disclose: (i) the transactions observed by Cowen in the analysis; (ii) the premiums paid in each transaction observed; and (iii) the inputs and assumptions underlying the range of discount rate of 8.6%.

38. With respect to Cowen's *Research Analyst Price Targets* analysis, the Proxy Statement fails to disclose: (i) the trading price targets for the shares of NIC common stock reviewed by Cowen; and (ii) the equity research analysts reviewed by Cowen.

39. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

42. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial

analysis that were prepared by Cowen and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

43. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

44. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

45. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of NIC within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of NIC, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of NIC, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of NIC, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

50. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

  C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

  D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

  E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 3, 2021            **RIGRODSKY LAW, P.A.**

                   By: */s/ Gina M. Serra*
                      Seth D. Rigrodsky (#3147)
                      Gina M. Serra (#5387)
                      Herbert W. Mondros (#3308)
**OF COUNSEL:**               300 Delaware Avenue, Suite 1220
                      Wilmington, DE 19801
**MELWANI & CHAN LLP**         Telephone: (302) 295-5310
Gloria Kui Melwani            Facsimile: (302) 654-7530
1180 Avenue of the Americas,       Email: sdr@rl-legal.com
8th Floor                  Email: gms@rl-legal.com
New York, NY 10036           Email: hwm@rl-legal.com
Telephone: (212) 382-4620
Email: gloria@melwanichan.com       *Attorneys for Plaintiff*